COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JOHN P. ALPHONSO, | § | |
| | | No. 08-12-00210-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 134th Judicial District Court |
| BISHOP JOHN DOUGLAS DESHOTEL | § | |
| AND THE ROMAN CATHOLIC | | of Dallas County, Texas |
| DIOCESE OF DALLAS, | § | |
| | | (TC# DC-12-01240-G) |
| Appellees. | § | |

## **O P I N I O N**

In this defamation case, John P. Alphonso appeals the trial court's order dismissing his claims against Appellees, Bishop John Douglas Deshotel and the Roman Catholic Diocese of Dallas, pursuant to the Texas Citizen Participation Act ("Act"). In three issues, Alphonso challenges the constitutionality of the Act and contends that the trial court erred in dismissing his lawsuit and in awarding attorney's fees and costs to Appellees pursuant to the Act. We affirm, in part, and reverse and remand, in part.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Alphonso is an ordained priest who was previously employed by the Roman Catholic Diocese of Dallas. While Alphonso was serving as the administrator of St. Jude Chapel ("St. Jude"), the Diocese received information that he was diverting donations intended for St. Jude to financial accounts in his name, those of his nephew and niece, and that of a charitable organization

created by him—the Diocese of Ahmedabad, Inc. ("DOA"). St. Jude sued Alphonso, his nephew and niece, and the DOA for conversion and successfully obtained a temporary restraining order prohibiting them from accessing the financial accounts in dispute.

The parties eventually settled.[1] Pursuant to the settlement agreement: (1) the parties agreed to release and discharge each other from all claims arising from or related to the suit; (2) Alphonso agreed to pay St. Jude $300,000 and shut down the DOA; and (3) St. Jude agreed to dismiss the lawsuit. A miscellaneous provision in the settlement agreement provided that:

> Neither this Agreement, nor any negotiations in connection herewith, shall be construed or deemed to be used as evidence or an admission on the part of the Parties hereto of any liability or wrongdoing for any of the Released Claims, and this Agreement shall not be offered or received into evidence as any such admission with respect to the Released Claims.

Approximately two months after the settlement agreement was signed, Bishop Deshotel read the following statement to the parishioners of St. Jude:

> We are pleased to inform you that a settlement agreement has been reached with Father John Alphonso. He has made restitution for funds that were misappropriated during the time he served at St. Jude Chapel. Three hundred thousand dollars have been wired to the Chapel account by Father Alphonso to reimburse the St. Jude donations as well as to cover a portion of the legal fees incurred.
>
> Pursuant to the settlement agreement, Father Alphonso has also dissolved the Diocese of Ahmedabad, Inc. and transferred the proceeds of the corporation to India. We are grateful that this dispute has been resolved.
>
> We appreciate your patience and your continued generosity to and support of St. Jude Chapel.

Alphonso subsequently sued Appellees for defamation, intentional infliction of emotional distress, and breach of contract. After answering, Appellees moved jointly to dismiss Alphonso's claims pursuant to the Act and to recover their attorney's fees and costs.

---

[1] Alphonso's niece was not a party to the settlement agreement.

The trial court heard Appellees' motion to dismiss and took it under advisement. Ten days later, the trial court—without explaining its reasons for doing so—granted the motion, dismissed Alphonso's lawsuit, and awarded Appellees $56,472.90 in attorney's fees and costs. Alphonso subsequently moved for reconsideration and for a new trial, but both motions were denied.

## DISMISSAL UNDER THE TEXAS CITIZENS PARTICIPATION ACT

In his first issue, Alphonso contends that the trial court erred in dismissing his defamation claim pursuant to the Act because he established, by clear and specific evidence, a *prima facie* case as to each essential element of his claim.[2] We disagree.

### *Applicable Law*

The Texas Legislature enacted the Act "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX.CIV.PRAC.&REM.CODE ANN. § 27.002 (West Supp. 2013). To achieve these ends, the Legislature provided that if a legal action is brought in response to a party's exercise of the right of free speech, the right to petition, or the right of association, that person may move to dismiss the action. *Id*. at § 27.003(a). The movant bears the initial burden to show by a preponderance of the evidence that the action "is based on, relates to, or is in response to the party's exercise" of any of the aforementioned constitutional rights. *Id*. at § 27.005(b)(1). If the movant satisfies this burden, then the trial court must dismiss the legal action unless the party who brought the action "establishes by clear and specific evidence

---

[2] Alphonso does not challenge the trial court's dismissal of his causes of action for breach of contract and intentional infliction of emotional distress.

3

a prima facie case for each essential element of the claim in question." TEX.CIV.PRAC.&REM.CODE ANN. § 27.005(c).

The Act does not define the phrases "clear and specific evidence" and "prima facie case." Those terms have been defined by case law, however. "Clear and specific evidence" is defined as "evidence unaided by presumptions, inferences, or intendments." *McDonald v. Clemens*, 464 S.W.2d 450, 456 (Tex.Civ.App.--Tyler 1971, no writ); *see also S. Cantu & Son v. Ramirez*, 101 S.W.2d 820, 822 (Tex.Civ.App.--San Antonio 1936, no writ). "Prima facie evidence" is defined as "evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue." *Duncan v. Butterowe, Inc.*, 474 S.W.2d 619, 621 (Tex.Civ.App.--Houston [14th Dist.] 1971, no writ). "In other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Id.*, *citing Simonds v. Stanolind Oil & Gas Co.*, 134 Tex. 332, 136 S.W.2d 207, 209 (1940).

### Standard of Review

We employ a *de novo* standard in reviewing a trial court's order dismissing a legal action under the Act. *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 726 (Tex.App.--Houston [14th Dist.] 2013, pet. denied). We review *de novo* whether: (1) the movant satisfied the initial burden imposed by Section 27.005(b); and (2) the non-movant satisfied the shifted, heightened burden imposed by Section 27.005(c). *Id.* But here, we need not concern ourselves with determining whether Appellees satisfied Section 27.005(b)'s initial burden because Alphonso does not argue that his defamation claim is not based on, related to, or in response to Appellees' exercise of their rights of free speech, of association, and to petition. Accordingly, our inquiry is limited to determining "*de novo* whether the record contains a minimum quantum of clear and

4

specific evidence that, unaided by inferences, would establish each essential element of the claim in question if no contrary evidence is offered." *Rehak Creative Servs., Inc.*, 404 S.W.3d at 727.

### *Discussion*

Alphonso has failed to meet his burden to establish by clear and specific evidence a prima facie case for each essential element of his defamation claim against Appellees.[3]

To recover for defamation, a public official must prove: (1) the defendant published a false statement; (2) which was defamatory to the public official; and (3) the false statement was made with actual malice concerning the truth of the statement.[4] *Huckabee v. Time Warner Entm't Co., L.P.*, 19 S.W.3d 413, 420 (Tex. 2000); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Alphonso contends that the statement to the parishioners of St. Jude that he misappropriated funds was false because he testified in his affidavit "that he did not misappropriate the funds in question." But Alphonso never testified in his affidavit that he did not misappropriate funds. Rather, Alphonso testified that the "Statements declar[ing] that I 'misappropriated' St. Jude Chapel's funds . . . were false and defamatory on their face because the written Release and Settlement Agreement specifically stated that there was no admission of any liability or wrongdoing." In light of several factors, we conclude that Alphonso's testimony is not enough to demonstrate by clear and specific evidence a prima facie case that Bishop Deshotel's statement is, in fact, false.

First, "[a] detailed defamatory statement should be readily discreditable." Marc A.

---

[3] A substantial portion of Alphonso's argument in his brief and at oral argument was devoted to arguing that the trial court was prohibited from considering controverting evidence in determining whether he satisfied his burden under Section 27.005(b). Given our conclusion that Alphonso did not establish a prima facie case based on the evidence he submitted, we need not address this argument.

[4] Alphonso does not argue that he is not a public figure for purposes of his defamation claim.

5

Franklin & Daniel J. Bussell, *The Plaintiff's Burden in Defamation: Awareness and Falsity*, 25 WM. & MARY L.REV. 825, 860 (1984). "A plaintiff is in the best position to know the facts about his own life and activities that will establish falsity. A plaintiff's simple denial would perhaps be sufficient in the abnormal situation of a defendant who publishes statements that conclusively defame without providing some information that would indicate truth. If the defendant included information tending to indicate truth, however, the plaintiff, who has access to the facts of his life, can be expected to discharge the burden of overcoming the suspicious circumstances." W. Page Keeton, *Defamation and Freedom of the Press*, 54 TEX.L.REV. 1221, 1235 (1976). Here, Alphonso is in a better position than Appellees to test the truth of a statement made about him given that the accusation that funds were misappropriated while he was in charge of St. Jude's is specific as to time or place. *See* Marc A. Franklin & Daniel J. Bussell, *The Plaintiff's Burden in Defamation: Awareness and Falsity*, 25 WM. & MARY L.REV. at 859. Alphonso, however, fails to deny that he misappropriated funds. Instead, he contends that the settlement agreement establishes that he is not liable. But the refusal to admit liability or wrongdoing for an act is not synonymous with the denial of that act. Accordingly, Alphonso cannot rely on the settlement agreement in discharging his evidentiary burden to establish by clear and specific evidence a prima facie case that Bishop Deshotel's statement is, in fact, false because he did not misappropriate donations intended for St. Jude.

Second, as reflected in the Act, a civil defendant enjoys the benefit of a presumption that he spoke the truth. *See id.* at 860. As was noted above, the movant need only satisfy the initial burden of proof by a preponderance of the evidence to be entitled to relief. In contrast, the non-movant must satisfy the heightened burden of proof by clear and convincing evidence of a

6

prima facie case to prevent dismissal. "The requirement of convincing clarity reflects the [Legislature's] desire to protect defendants from being held liable on barely sufficient evidence and requires courts to resolve doubtful cases in favor of the defendants." Marc A. Franklin & Daniel J. Bussell, *The Plaintiff's Burden in Defamation: Awareness and Falsity*, 25 WM. & MARY L.REV. at 856. This is further reflected in the Legislature's pronouncement that the Act is to "be construed liberally to effectuate its purpose and intent fully." TEX.CIV.PRAC.&REM.CODE ANN. § 27.011(b)(West Supp. 2013). Alphonso's testimony is simply not enough to overcome this presumption and demonstrate by clear and specific evidence a prima facie case that Bishop Deshotel's statement is, in fact, false.

Alphonso's first issue is overruled.

## CONSTITUTIONALITY OF THE TEXAS CITIZENS PARTICIPATION ACT

In his second issue, Alphonso argues Chapter 27 violates the "open courts" provision of the Texas Constitution. But Alphonso never raised his constitutional complaint in the trial court, and therefore he has failed to preserve it for appellate review. *See*, *e.g.*, TEX.R.APP.P. 33.1(a)(1)(complaints raised on appeal must first be raised in the trial court); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222 (Tex. 2002)(open-courts challenges are waived on appeal if not raised at trial); *S.V. v. R.V.*, 933 S.W.2d 1, 25 (Tex. 1996)(same); *City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104-05 (Tex. 1986)(per curiam)(same).

Alphonso contends that "the rule from *Grant* [and *Schautteet*] should not apply here" because "[t]his appeal does not arise out of a summary judgment, and Chapter 27 [, unlike Texas Rule of Civil Procedure 166(a),] does not [explicitly require that challenges be presented to the trial court first]." However, the legal principle requiring a litigant to preserve constitutional

challenges—including open-courts challenges—by raising them first in the trial court is broad in nature and not limited solely to summary judgment proceedings. *See S.V.*, 933 S.W.2d at 25 (concluding that party in divorce action waived argument that open-courts provision required application of the discovery rule by failing to raise argument in the trial court); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993)(holding that party in paternity suit waived due process and equal protection challenges by failing to raise them in the trial court).

Alphonso also contends that he did not waive his constitutional challenge to the Act by failing to raise it in the trial court because appellate courts "can address 'fundamental issues of constitutionality' for the first time on appeal" and cites *Ramsey v. Dunlop*, 146 Tex. 196, 205 S.W.2d 979 (1947) in support. But Alphonso's reliance on *Ramsey* is misplaced. Although the Texas Supreme Court recognized in *Ramsey* that appellate courts may consider unpreserved error that is "fundamental," it did not identify open-courts challenges as fundamental. 205 S.W.2d at 983. Instead, the Supreme Court broadly defined "fundamental error" as "an error which directly and adversely affects the interest of the public generally, as that interest is declared in the statutes or Constitution of this State . . . ." *Id*.

Since *Ramsey*, appellate courts have recognized fundamental error in a few, limited circumstances. The first is when the record shows on its face that the court lacked jurisdiction. *See McCauley v. Consolidated Underwriters*, 157 Tex. 475, 304 S.W.2d 265, 266 (1957)(per curiam)(concluding error is fundamental when the record shows a jurisdictional defect). The second is when the rights and welfare of minors are implicated. *See In re C.O.S.*, 988 S.W.2d 760, 767 (Tex. 1999)(reviewing trial court's failure to give mandatory statutory admonishments in a juvenile delinquency proceeding); *State v. Santana*, 444 S.W.2d 614, 615 (Tex. 1969), *cert.*

8

*granted, but subsequently vacated on other grounds*, 397 U.S. 596, 90 S.Ct. 1350, 25 L.Ed.2d 594 (reviewing submission of "preponderance of the evidence" as the burden of proof in a juvenile delinquency case); *R.A.M. v. State*, 599 S.W.2d 841, 846 (Tex.Civ.App.--San Antonio 1980, no writ)(reviewing submission of an invalid theory of liability in a juvenile delinquency case); *Woodard v. Tex. Dep't of Human Resources*, 573 S.W.2d 596, 597 (Tex.Civ.App.--Amarillo 1978, writ ref'd n. r. e.)(reviewing submission of "preponderance of the evidence" as the burden of proof in a parental-rights termination case); *Rey v. Rey*, 487 S.W.2d 245, 248 (Tex.Civ.App.--El Paso 1972, no writ)(reviewing omission in a jury charge in a divorce case that deprived a minor child of the right to support). Notably, the Texas Supreme Court refused to extend the fundamental-error doctrine to unpreserved charge error in parental termination cases because, in large part, the Supreme Court failed to "see any reasonable, practical, and consistent way of reviewing unpreserved complaints of charge error in termination cases that satisfies our narrow fundamental-error doctrine." *In re B.L.D.*, 113 S.W.3d 340, 351 (Tex. 2003).

Given that the fundamental-error doctrine is narrow in scope and that the Texas Supreme Court has repeatedly held that open-courts challenges are waived on appeal if not preserved in the trial court, we conclude that *Ramsey* does not support Alphonso's contention that he can challenge the constitutionality of Chapter 27 on appeal for the first time. *See In re B.L.D.*, 113 S.W.3d at 351; *Grant*, 73 S.W.3d at 222; *S.V.*, 933 S.W.2d at 25; *Schautteet*, 706 S.W.2d at 104-05.

Alphonso's second issue is overruled.

### ATTORNEY'S FEES

In his third and final issue, Alphonso argues the trial court erred in awarding Appellees attorney's fees and costs because there is no evidence supporting the award. We agree.

9

*Applicable Law*

The Act mandates the award of attorney's fees and costs to a successful movant. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 27.009(a)(1)(West Supp. 2013). Nevertheless, a party seeking attorney's fees and costs bears the burden to put forth evidence regarding its right to the award, as well as the reasonableness and necessity of the amount of the fee. *Brownhawk, L.P. v. Monterrey Homes, Inc.*, 327 S.W.3d 342, 348 (Tex.App.--El Paso 2010, no pet.).

*Discussion*

Appellees failed to satisfy their burden to put forth evidence regarding their right to recover attorney's fees and costs in this case. Appellees did not attach to any of their pleadings documents supporting the award of attorney's fees and costs, nor did they prove their entitlement to fees and costs at the hearing on their motion to dismiss. The transcript of the hearing reveals that though Appellees offered the affidavit of Michael Moran, their counsel of record, in support of their request for attorney's fees and costs, the trial court neither admitted nor excluded the offer. Instead of ruling on the offer of evidence, the trial court permitted Alphonso to file objections, if any, to the affidavit within a reasonable time after the hearing. Alphonso filed his objections three days after the hearing. One week later, the trial court granted the motion to dismiss and—despite never having admitted Moran's affidavit into evidence or ruled on Alphonso's objections—awarded Appellees the attorney's fees and costs requested by them. The trial court erred, however, in awarding Appellees attorney's fees and costs.

Appellees burden in producing evidence and proving their entitlement to attorney's fees and costs included obtaining a ruling on their offer of Moran's affidavit. *Ruth v. Imperial Ins. Co.*, 579 S.W.2d 523, 525 (Tex.Civ.App.--Houston [14th Dist.] 1979, no writ). "Evidence which

10

is not admitted cannot be considered proof in the case." *Ruth*, 579 S.W.2d at 525. It is presumed that the trial court makes its decision based "on the competent and admissible evidence" before it when it acts. *Id*; *Methodist Hosps. of Dallas v. Tall*, 972 S.W.2d 894, 898 (Tex.App.--Corpus Christi 1998, no pet.)("It is axiomatic that an appellate court reviews actions of a trial court based on the materials before the trial court at the time it acted."). Here, because Appellees never obtained a ruling from the trial court admitting Moran's affidavit into evidence, there was no competent proof of attorney's fees and costs before the trial court when it awarded fees and costs to Appellees.[5] *See Gilbert v. City of El Paso*, 327 S.W.3d 332, 337-38 (Tex.App.--El Paso 2010, no pet.)(concluding that there was no evidence to support the award of appellate attorney's fees because affidavits and supporting documents to establish the amount of attorney's fees were never admitted and instead the trial court simply entered a final judgment awarding fees).

Appellees do not argue—as the appellee did successfully in *Brownhawk*—that we should uphold the award of attorney's fees and costs on appeal because Moran's affidavit is part of the appellate record. *See Brownhawk*, 327 S.W.3d at 348-49. But even had Appellees made this argument and relied on *Brownhawk* in making it, we would not have been swayed because *Brownhawk* is distinguishable. In that case, the trial court, at the close of evidence, awarded appellees attorneys' fees. 327 S.W.3d at 344. On appeal, the appellant argued that "the *appellate record* is devoid of evidence to support the [trial] court's award." *Id.* at 348 [Emphasis added]. We disagreed, concluding that there was evidence in the appellate record to support the award because the appellee supplemented the appellate record with the affidavit supporting the

---

[5] Indeed, the trial court signed an order sustaining Alphonso's objections to Moran's affidavit more than one month after the trial court dismissed Alphonso's suit and awarded fees and costs to Appellees. But the trial court's order is of no significance. When the trial court awarded Appellees attorney's fees and costs, there was simply no competent and admissible evidence of fees and costs to support their award.

11

award of attorney's fees and established to our satisfaction that the affidavit "was before the [trial] court when it entered its judgment . . . ." *Brownhawk*, 327 S.W.3d at 348-49. But the issue here is not whether the appellate record is devoid of evidence to support the award of attorney's fees and costs, but rather whether there was any competent and admissible evidence before the trial court when it awarded the fees. Unlike the appellant in *Brownhawk*, Alphonso argues here that no such evidence existed at trial to support the award of attorney's fees. As discussed above, we agree with Alphonso.

Alphonso asks that we reverse and render a take-nothing award on this issue. However, given that Appellees are entitled to attorney's fees and costs under the Act because the trial court granted their motion to dismiss and we have upheld that ruling on appeal, the proper disposition in this case is to reverse the award of attorney's fees and costs and remand that issue back to the trial court for a new trial. *See ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 124 (Tex.App.--El Paso 1996, no writ)(sustaining appellant's challenge to the trial court's award of $2,500 attorney's fees to appellee for responding to a motion for new trial because the evidence was insufficient to support such award, but reversing and to the trial court for a determination of reasonable and proper attorney's fees); *Smith v. Smith*, 757 S.W.2d 422, 426 (Tex.App.--Dallas 1988, writ denied)("When a trial court grants an award of attorney's fees without any evidence in the record to support such an award, the proper action on appeal is to remand that part of the judgment awarding attorney's fees for a determination of the reasonableness of the amount of attorney's fees to be awarded."); *Uhl v. Uhl*, 524 S.W.2d 534, 538 (Tex.Civ.App.--Fort Worth 1975, no writ)("When a plaintiff is clearly entitled to attorney's fees in some amount but where there had been no proof in the trial court of the amount there may be severance of that issue with

12

remand to the trial court for a new trial on that issue.").

Alphonso's third issue is sustained in part and overruled in part.

## CONCLUSION

The portion of the trial court's judgment pertaining to the award of attorney's fees and costs is reversed and remanded for a new trial on that issue. In all other respects, the judgment of the trial court is affirmed.

November 20, 2013

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J, and Barajas, Senior Judge
Barajas, Senior Judge (Sitting by Assignment)

13